**UNITED STATES of America**

v.

**Louis M. URSINI, Jr. and Richard Anthony Capaldo.**

**Crim. No. 11972.**

United States District Court
D. Connecticut.

Nov. 27, 1967.[*]

See also D.C., 276 F.Supp. 986.

---

6. Cf. United States v. Flynn, 130 F.Supp. 413, 421 (S.D.N.Y.1955).

7. United States v. Flynn, supra note 6, at 421.

* The Court of Appeals for the Second Circuit on November 29, 1967 entered orders denying motions by Ursini and Capaldo for bail pending appeal.

Samuel J. Heyman and J. Daniel Sagarin, Asst. U. S. Attys., New Haven, Conn., for the United States.

Thomas D. Clifford, of Jacobs, Jacobs, Grudberg & Clifford, New Haven, Conn., for defendant Ursini.

Richard L. Jacobs, New Haven, Conn., for defendant Capaldo.

TIMBERS, Chief Judge.

Immediately after defendants Louis M. Ursini, Jr. and Richard Anthony Capaldo were sentenced on November 6, 1967 to terms of imprisonment of 24 years and 22 years, respectively, upon their convictions by a jury of armed bank robbery in violation of 18 U.S.C. § 2113 (d), the government moved, pursuant to 18 U.S.C. § 3148, that both defendants be held without bond pending appeal. After a hearing at which defendants were present and represented by counsel, the Court granted the government's motion.[1]

Pursuant to leave granted at the conclusion of the hearing to counsel for any party to request more detailed and specific findings of fact and conclusions of law with respect to the Court's order,[2] the government has filed a written motion requesting such findings and conclusions.

The Court, accordingly, makes the following findings of fact and conclusions of law in support of its order that defendants be detained pending appeal—specifically, in support of the Court's holding, pursuant to 18 U.S.C. § 3148, that the Court "has reason to believe that no one or more conditions of release [specified in 18 U.S.C. § 3146(a)] will reasonably assure that the [defendants] will not flee or pose a danger to any other person or to the community."

### FINDINGS OF FACT

(1) Defendants were charged in a three count indictment returned by a grand jury in the District of Connecticut on April 12, 1967 with robbing the Oakville Office of the Waterbury Savings Bank in violation of 18 U.S.C. §§ 2113(a), 2113(b) and 2113(d).

(2) Ably represented by court appointed counsel, defendants were convicted on

---

1. Transcript Of Proceedings Held On November 6, 1967 In Connection With Bond Pending Appeal, pp. 30–47.

2. Id. at 43.

all counts by a jury on October 4, 1967, after a 16 day trial at New Haven.

(3) Following presentence investigations and reports, defendants were sentenced on November 6, 1967 upon their convictions under count three of the indictment which charged armed bank robbery (18 U.S.C. § 2113(d)). Ursini was sentenced to a term of 24 years imprisonment and was fined $10,000. Capaldo was sentenced to a term of 22 years imprisonment and was fined $10,000. The sentence of imprisonment in the case of each defendant was imposed under 18 U.S.C. § 4208(a) (2). The Court recommended that defendants be imprisoned in separate maximum security penitentiaries not in, or anywhere in the vicinity of, the State of Connecticut. Imposition of sentence under counts one and two of the indictment was suspended as to each defendant.[3] Both defendants have filed notices of appeal.

(4) There was evidence from which the jury could have found that defendants held up the Oakville Bank at gunpoint one week before Christmas in 1963. Ursini was armed with an automatic pistol, Capaldo with a sawed-off shotgun. Under threat of being killed,[4] four lady bank tellers were forced to turn over some $20,000 to defendants. After herding the four tellers to the rear of the bank at gunpoint and forcing them to lie down, defendants escaped. They had taken great pains to disguise and conceal their identities: Ursini was dressed as a woman, including a blond wig and heavy make-up; Capaldo wore a hooded jacket and mask. Both wore gloves.

(5) The evidence against Ursini was mainly the eye witness testimony of three of the four lady bank tellers who, with varying degrees of positiveness, identified Ursini as the robber disguised as a woman who held up the bank at gunpoint. There also was evidence that two days before the bank robbery Ursini had accompanied a friend to a beauty salon where Ursini's wife had worked; Ursini's friend borrowed a blond wig similar to the one worn by the robber disguised as a woman on the day of the bank robbery; the borrowed wig was left by Ursini's friend in his room in a boarding house where Ursini worked, to which room Ursini had access; the wig subsequently was discovered to be missing from the boarding house room, Ursini's friend having disclaimed any knowledge of its disappearance and not having seen it again until it was in the hands of the police. Ursini did not testify at the trial.

(6) The evidence against Capaldo was mainly the testimony of three members of a family—Mr. and Mrs. Robert Longo and Pamela Hansen—who had been friends of Capaldo and his family. Each of these three witnesses testified that Capaldo on several occasions had boasted to them of having "pulled the Oakville Bank job," thus accounting for the money with which he had been able to buy horses, cars and a $650 diamond ring for his girl friend, Ronnie,[5] as well as the $800 or $900 he had loaned or given to his father. These three witnesses also testified that Capaldo had told them that Ronnie had beaten the police to his apartment, had taken the money and guns and had driven around Waterbury with them for several hours until the police had left. Capaldo did not testify at the trial.

(7) The essential evidence against Ursini and Capaldo, briefly summarized above, was subjected to extensive cross

---

3. Transcript Of Sentencing Proceedings Held On November 6, 1967, pp. 23–28.

4. For example, Mrs. Ruth J. Tracy, one of the tellers, testified that Ursini said to her, "This is a stick-up, fill this bag up with money or I'll kill you."

5. Capaldo was not married to Ronnie at the time of the bank robbery; but he did marry her subsequently and before the trial.

For a summary of the testimony of Mr. and Mrs. Longo and Pamela Hansen against Capaldo, see Memorandum Of Decision On Defendant Capaldo's Motion For Judgment Of Acquittal Notwithstanding The Verdict And, In The Alternative, For A New Trial, filed November 1, 1967, pp. 4–9 (276 F.Supp. 986, 988–990).

examination and was the subject of lengthy arguments to the jury. In the last analysis, however, the jury, by its verdicts of guilty against each defendant, could have found the evidence against each to have been substantially as stated above. The weight of the evidence against each defendant was overwhelming.

(8) Ursini, age 26, and Capaldo, age 28, each has proven records of previous convictions extending back over a period of at least ten years. The record of each defendant reflects a flagrant disregard for judicial authority. The record of each defendant, aside from original convictions, shows repeated violations of probation and parole—violations which have resulted in further serious trouble for defendants and grief to others. During one of Capaldo's periods of probation, two youths were killed as a result of Capaldo's permitting his automobile (in which he was a passenger) to engage in a race with another automobile on the open highway from Prospect to New Haven. During one of Ursini's periods of probation, he was sentenced to jail for leaving the state without permission; while being taken to jail as a probation violator, he escaped from the custody of a deputy sheriff, for which he was convicted and sentenced to state prison for a term of 1 year and 1 day to 3 years (felony); and, upon being paroled after serving a year of this sentence, he was convicted of parole violation and returned to state prison.

(9) Within a few months after the bank robbery involved in the instant case, Capaldo urged Robert Longo (one of the witnesses in the instant case) to join Capaldo in holding up another bank in Massachusetts;[6] and, on another occasion, Capaldo urged Longo to join Capaldo in stealing some horse saddles.

On each such occasion, Capaldo boasted to Longo that "I know the ropes." There was no evidence that Capaldo's proposal to hold up the bank in Massachusetts was ever carried out. There was evidence that Capaldo's proposal to steal the horse saddles was carried out—for which Longo was convicted and Capaldo was acquitted.

(10) During the trial of the instant case, an episode occurred involving Ursini which the Court believes is relevant upon the question of whether his release upon bond pending appeal would "pose a danger to any other person or to the community." On October 2, 1967, while F. B. I. Agent William B. Zimmerman was on the witness stand testifying in the presence of the jury, Ursini jumped from his seat at the counsel table and literally lunged toward Zimmerman, shouting some protest against the testimony. Ursini's counsel and members of his family physically restrained him and forced him back into his chair. The Court declared a recess, excused the jury and committed Ursini to the custody of the marshal. Upon reconvening after the noon recess, in order to permit the trial to continue without prejudicing Ursini before the jury, the Court released Ursini from custody and permitted him to continue to sit at the counsel table. This episode has been the subject of extensive comment and explanation by counsel and by Ursini himself at the bail hearings which have been held.[7] In the last analysis, however, based on the Court's own observations of Ursini's demeanor in connection with this episode, the Court is constrained to find that Ursini displayed a degree of uncontrollable hostility and venom which certainly poses a danger to other persons and to the community if he were to be released upon bond pending appeal.

---

6. Capaldo's proposal to hold up the Massachusetts bank was not allowed in evidence before the jury at the trial of the instant case; it nevertheless is relevant upon the matter of bail (18 U.S.C. § 3146 (f)) and is part of the record before the Court on that issue. Transcript Of Proceedings Held On November 6, 1967 In Connection With Bond Pending Appeal, pp. 41–42; Transcript Of Proceedings Held On October 4, 1967 In Connection With Bond Pending Sentences, pp. 3037, 3049–3050.

7. Transcripts, supra note 6, at 31, 41–42, 44–47; and 3037, 3042, 3055.

(11) All of the key witnesses in this case live in the Watertown-Oakville-Waterbury area, as do defendants and their families. For example, the three lady bank tellers who were key witnesses against Ursini reside as follows: Mrs. Tracy in Oakville; Mrs. Lemay in Watertown and Mrs. Kirouac in Watertown; the three key witnesses against Capaldo— Mr. and Mrs. Longo and Pamela Hansen —reside in Watertown; and Agent Zimmerman resides in Oakville. Ursini and his family live in Watertown. Capaldo, now living in Beacon Falls, formerly lived in Oakville; his parents live in Waterbury.

(12) During the trial, while defendants were released pursuant to the Bail Reform Act and after the witness Robert Longo had testified against Capaldo, Longo received telephone calls threatening his life.[8] This matter is still under investigation.

## CONCLUSIONS OF LAW

(1) The Court is authorized to order that defendants, who have been convicted and have filed notices of appeal, be detained without bond pending appeal. 18 U.S.C. § 3148.

(2) The Court has reason to believe that no one or more conditions of release [specified in 18 U.S.C. § 3146(a)] will reasonably assure that defendants will not flee or pose a danger to any other person or to the community. 18 U.S.C. § 3148.

(3) The Court accordingly orders that defendants Louis M. Ursini, Jr. and Richard Anthony Capaldo be detained without bond pending their appeals from their judgments of conviction entered in this Court on November 6, 1967. 18 U.S.C. § 3148.

## OPINION

Recognizing that only in an extraordinary case should bail pending appeal be denied, the Court believes that this is just such an extraordinary case.

From the time of the indictment, through the trial, and until they were convicted by the jury, defendants were accorded the benefits of the liberal provisions of the Bail Reform Act and were released pursuant thereto.[9] Once convicted and sentenced to long terms of imprisonment, and having appealed, however, defendants, pursuant to the same Act, are subject to being detained without bond, upon appropriate findings by the Court.

Here the facts not only justify the conclusion that the convicted defendants cannot be released pending appeal without risk of flight or without posing a danger to any other person or to the community; in my opinion, the facts compel that conclusion. The nature and circumstances of the offense were particularly aggravated: four lady bank tellers were forced at gunpoint, and under threat of being killed, to turn over

---

8. Transcript Of Proceedings Held On November 6, 1967 In Connection With Bond Pending Appeal, pp. 31–32, 37, 40, 42.

9. 18 U.S.C. § 3146(a).
   On April 12, 1967, when the indictment was handed up, bail in amount of $25,000 with surety was fixed by the Court for each defendant. On April 24, pursuant to 18 U.S.C. § 3146(a) (3), the Court ordered that each defendant be released upon depositing in the registry of the Court cash or other security representing a percentage of the amount of the appearance bond; defendants accordingly were released and remained at liberty through the trial. On October 4, upon the return of the jury verdicts of guilty, the Court ordered each de-

fendant held in $50,000 bail with surety pending imposition of sentence; neither defendant raised that bail and each has been incarcerated since October 4. After imposing sentence on November 6, the Court ordered each defendant detained without bail pending appeal, pursuant to 18 U.S.C. § 3148.
At the bail hearing on November 6, in response to the Court's question, Ursini's counsel stated that "The defendant Ursini . . . might well be able to post the fifty thousand professional surety bond that the Court imposed on the day of conviction." Capaldo's counsel did not state what bond Capaldo could post. Transcript Of Proceedings Held On November 6, 1967 In Connection With Bond Pending Appeal, pp. 34–36.

$20,000 to defendants. Despite elaborate precautions to disguise and conceal their identities, defendants eventually were apprehended and convicted by the jury upon what I regard as an overwhelming weight of evidence against each defendant—including eye witness identification testimony against one defendant and testimony of direct admissions by the other. The proven records of previous convictions of each defendant reveal a flagrant disregard for judicial authority; moreover, their records are flags of danger—to themselves as well as to others—based on their performances when released in the past upon probation and parole. One defendant, shortly after the instant bank robbery of which he has been convicted, urged another person to join him in committing other crimes, including another bank robbery. The other defendant, during the trial, in lunging at an F. B. I. agent on the witness stand, displayed at best an uncontrollable temper, at worst a depth of hostility and venom, to which other persons and the community should not be subjected. Key witnesses live in close proximity to defendants and their families. The life of one witness, after testifying and while defendants were released on bond, has been threatened.

To me the conclusion is inescapable that there are no conditions of release, at this stage of the case and upon this record, which will reasonably assure that these defendants will not flee or pose a danger to any other person or to the communty. I so hold.

■ At the bail hearing on November 6, 1967, the government urged as an additional ground for detaining defendants that the appeals would be frivolous.[10] I declined then to place my order on that ground and I continue to decline to do so. A finding that the appeals would be frivolous is neither necessary nor, in my opinion, appropriate as a ground for such an order in this case. Such finding is not necessary because the statute clearly authorizes detention without bond upon the finding I have made, namely, the existence of risk of flight or danger to others; a finding that the appeals would be frivolous is simply an *alternative* ground for detention provided by the statute and therefore not indispensable. 18 U.S.C. § 3148. A finding by the trial court that the appeals would be frivolous, moreover, strikes me as being inappropriate under all the circumstances of this particular case; it is sufficient, in my view, to have indicated in the findings the jury questions squarely presented by the essential evidence against each defendant. Having done so, I believe it is more appropriately within the competence of a reviewing court, than of the trial court, to judge, for purposes of bail, the degree of substance presented by the appeals—if indeed such determination is required.