**UNITED STATES of America**
v.
**Ralph "Whitey" TROPIANO, William P. Grasso and Lawrence R. Pellegrino.**

**Crim. No. 12201.**

United States District Court
D. Connecticut.

Nov. 20, 1968.*

See also D.C. 284 F.Supp. 477; 296 F.Supp. 284.

J. Daniel Sagarin and John Cassidento, Asst. U.S. Attys., New Haven, Conn., for the United States.

Howard A. Jacobs, of Jacobs, Jacobs, Grudberg & Clifford, New Haven, Conn., for defendant Tropiano.

Ira B. Grudberg, of Jacobs, Jacobs, Grudberg & Clifford, New Haven, Conn., for defendant Grasso.

Joseph Biafore, Jr., of Meuser, Gentile & Biafore, Bridgeport, Conn., for defendant Pellegrino.

**MEMORANDUM OF DECISION AND ORDER THAT DEFENDANTS BE HELD WITHOUT BOND PENDING SENTENCE.**

TIMBERS, Chief Judge.

Immediately after the jury returned its verdict at 9:15 P.M. on Friday, November 15, 1968, convicting defendants Tropiano, Grasso and Pellegrino of extortion or attempted extortion affecting interstate commerce in violation of the Hobbs Anti-Racketeering Act, 18 U.S.C. § 1951, and convicting Tropiano and Grasso of conspiring so to do, 18 U.S.C. § 1951, the government moved, pursuant to 18 U.S.C. § 3148, that each of the three defendants be held without bond pending imposition of sentence. After an immediate hearing at which defendants were present and represented by

---

* District Court's order denying bail pending sentence affirmed by Court of Appeals for Second Circuit on December 2, 1968.

counsel, the Court granted the government's motion.

In accordance with the practice recently recommended by the Chief Judge of the Court of Appeals, the Court makes the following findings of fact and conclusions of law in support of its instant written order, and confirming its oral order made from the bench at the conclusion of the hearing on November 15, that defendants be detained pending imposition of sentence—specifically, in support of the Court's holding, pursuant to 18 U.S.C. § 3148, that the Court "has reason to believe that no one or more conditions of release [specified in 18 U.S.C. § 3146(a)] will reasonably assure that the [defendants] will not * * * pose a danger to any other person or to the community."

## FINDINGS OF FACT

(1) Defendants were charged in a four count indictment returned by a grand jury in the District of Connecticut on March 27, 1968 with extortion and attempted extortion by the wrongful use of threatened force, violence and fear, and conspiring so to do, in violation of 18 U.S.C. § 1951.

(2) After a 17 day trial at New Haven, all three defendants, ably represented by experienced counsel, were convicted by a jury on November 15, 1968 under the substantive count charging extortion and attempted extortion (Count One); and defendants Tropiano and Grasso were convicted under the conspiracy count (Count Four), defendant Pellegrino being acquitted under the conspiracy count.[1]

(3) The extortion and attempted extortion of which defendants were convicted was directed at the refuse removal business of Caron Refuse Removal, Inc. in Milford, Connecticut, and particularly certain accounts being serviced by that company in Milford and the right of that company to do business in Milford.

(4) Caron Refuse Removal, Inc. is a family business operated chiefly by Leonard Caron, Jr., assisted by his wife Ruth, and by his father and mother. Leonard and Ruth Caron have five young children. They live in Stratford, Connecticut.

(5) During the indictment period, between March 2, 1967 and July 4, 1967, defendants Tropiano and Grasso operated the C & A Refuse Removal Company in the New Haven area; and defendant Pellegrino operated the B & L Carting Company in the Bridgeport area.

(6) There was uncontroverted evidence that Pellegrino represented to Leonard Caron and to members of the Bridgeport Independent Refuse Collectors Association (BIRCA) that Tropiano and Grasso were his partners and backers.[2]

(7) The evidence of extortion and attempted extortion focused chiefly upon two meetings at which the three defendants were present together: one at the Howard Johnson restaurant in Milford on March 2, 1967; the other at the Reliable Sanitation garage in Bridgeport on April 7, 1967.

(8) There was evidence from which the jury could have found, with respect to the meeting between the three defendants and Leonard Caron at the Howard Johnson restaurant on March 2, 1967:

   (a) That Grasso told Caron if he did not cooperate by discontinuing the servicing of Jo-Nick's account in Milford, he would be pushed out of Milford—way out.[3]

   (b) That Tropiano told Caron that they knew how to take care of guys like Caron.[4]

---

1. Count Two, which charged all three defendants with an additional substantive offense of extortion or attempted extortion, resulted in judgments of acquittal as to all defendants at the close of the government's evidence at trial. Rule 29(a), Fed.R.Crim.P.

   Count Three, which charged Pellegrino only with a separate substantive offense of extortion or attempted extortion, was severed from the trial of the other counts. Rule 14, Fed.R.Crim.P. Pellegrino has not yet been tried on Count Three.

2. Trial Transcript, pp. 304, 438.

3. Id. at 306.

4. Id. at 306.

(c) That on the way home that night, Pellegrino told Caron that he was crazy, that he did not know what he was doing, that Tropiano and Grasso were not to be fooled with and that Caron would end up getting his head broke.[5]

(9) There was evidence from which the jury could have found, with respect to the meeting attended by the three defendants, Leonard Caron and a number of members of BIRCA at the Reliable Sanitation garage on April 7, 1967:

(a) That Grasso told the group if they did not cooperate by persuading Caron to stop doing business in Milford he would buy trucks, equip them with muscle and send them into Bridgeport to give the members a rough time.[6]

(b) That Grasso told the group where he came from in New York they knew how to take care of guys like Caron: he would end up either with his arms broke or in the river.[7]

(c) That Grasso told the group you can stretch a rubber band just so far and it's going to break and somebody will get hurt.[8]

(d) That Tropiano told the group he had enough money to buy trucks and furnish them with muscle to send into Bridgeport if the members did not persuade Caron to stop servicing Milford customers.[9]

(e) That Pellegrino, after the April 7, 1967 meeting, called Caron and told him if he continued to service accounts of the C & A Refuse Removal Company (operated by Tropiano and Grasso) something might happen to Caron's family.[10]

(10) Officers of the Connecticut State Police testified that shortly after the March 2, 1967 meeting at the Howard Johnson restaurant and on the night of the April 7, 1967 meeting at the Reliable Sanitation garage, they observed that Leonard Caron was frightened.

(11) There was evidence from which the jury could have found that Leonard Caron knew of the "very bad reputation" of the defendants,[11] such evidence having been admitted under guarded instructions to the jury that it was relevant upon the issue of whether defendants deliberately had induced fear in the victim by making known their reputations to him, that is "by the actions or statements of the defendants themselves."[12]

(12) The evidence referred to above was the subject of extensive cross examination and lengthy arguments to the jury. Furthermore, although defendants themselves did not testify at the trial, they called six witnesses, some of whom contradicted some of the evidence referred to above. In the last analysis, however, the jury, by its verdict of guilty against each defendant, could have found substantially as stated above.

(13) Each of the defendants has records of prior convictions. Tropiano's record over a period of nearly 40 years is the most serious; it consists of a number of felony convictions, including offenses which have involved the use and possession of deadly weapons.

(14) All of the key witnesses in this case and their families live in the Bridgeport-New Haven areas, as do defendants and their families. Most of the jurors who sat on this case likewise live in the Bridgeport-New Haven areas.

(15) Upon the return of the indictment on March 27, 1968, the Court fixed bail at $100,000 for Tropiano, at $25,000 for Grasso and at $5,000 for Pellegrino. After a full hearing on motions by Tropiano and Grasso to reduce their bail, the

5. Id. at 308.
6. Id. at 439.
7. Id. at 440.
8. Id. at 441.
9. Id. at 441.
10. Id. at 464.
11. Id. at 1359.
12. Id. at 1359–62.

Court adhered to its original orders fixing bail.[13] All three defendants promptly posted surety bonds in the amounts fixed and all were released pursuant thereto prior to and during trial.

(16) Upon the return of the jury verdicts of guilty against each defendant on November 15, 1968, the government moved to revoke each defendant's bond and to detain each without bond pending imposition of sentence. After a full hearing, the Court granted the government's motion.

(17) At the request of defendants' counsel at the conclusion of the hearing on the instant application on November 15, 1968, the Court ordered the official court reporter to give top priority to transcribing the balance of the trial minutes, a substantial portion of which has already been transcribed. The reporter has been relieved of all other assignments until this transcript is completed.

### CONCLUSIONS OF LAW

(1) The Court is authorized to order that defendants, who have been convicted and are awaiting sentence, be detained without bond. 18 U.S.C. § 3148.

(2) The Court has reason to believe that no one or more conditions of release [specified in 18 U.S.C. § 3146(a)] will reasonably assure that defendants will not pose a danger to any other person or to the community. 18 U.S.C. § 3148.

(3) The Court accordingly orders that defendants Ralph "Whitey" Tropiano, William P. Grasso and Lawrence R. Pellegrino be detained without bond pending imposition of sentence pursuant to the jury verdicts of guilty returned against each defendant on November 15, 1968.

### OPINION

This Court has tried carefully to adhere to what it believes to be the salutary policy of denying bail pending sentence or appeal only in an extraordinary case.[14] This is just such an extraordinary case, in my view.

■ From the time of the indictment, while awaiting trial, throughout the trial, and until they were convicted by the jury, defendants were accorded the benefits of the liberal provisions of the Bail Reform Act and were released pursuant thereto. 18 U.S.C. § 3146(a). Once convicted and while facing possible long terms of imprisonment, however, defendants, pursuant to the same Act, are subject to being detained without bond, upon appropriate findings by the Court. 18 U.S.C. § 3148.

The nature and circumstances of the offenses for which defendants were convicted were particularly aggravated. The weight of the evidence against each defendant was overwhelming. The proven records of previous convictions of each defendant reveal a flagrant disregard for judicial authority. Tropiano's criminal record, moreover, discloses a propensity to commit crimes of violence and to use deadly weapons.

13. See United States v. Devlin, Tropiano and Grasso, 284 F.Supp. 477, 479–80 (D. Conn.1968).

14. Compare United States v. Ursini and Capaldo, 276 F.Supp. 993 (D.Conn.1967) (government's motion that defendants be held without bond pending appeal granted; Court of Appeals denied bail pending appeal on November 29, 1967) with United States v. Coppola and Connelly, 280 F.Supp. 192 (D.Conn.1968) (government's motion that defendants be held without bond pending appeal denied); see United States v. Crutcher, Hazel and Payne, 287 F.Supp. 356 (D.Conn.1968) (defendants' motions for reduction of bail pending appeal denied).
See also Carbo v. United States, 302 F. 2d 456 (9 Cir.) (defendants' motions for bail pending appeal after convictions under Hobbs Act denied), aff'd (as to Carbo), 82 S.Ct. 662, 7 L.Ed.2d 769, rev'd (as to Sica), 82 S.Ct. 669, 7 L.Ed.2d 778 (1962) (opinion by Douglas, J.), convictions affirmed on appeal, 314 F.2d 718 (9 Cir. 1963), cert. denied, 377 U.S. 953 (1964). Cf. United States v. Wilson, 257 F.2d 796 (2 Cir. 1958) (bail pending appeal denied); United States v. Erwing, 268 F.Supp. 877 (N.D.Cal.1967) (bail revoked pending appeal).

██ The record of sworn testimony in this case [15] amply demonstrates that each of the defendants poses a distinct danger to other persons and to the community. The very crimes of which defendants have been convicted involved the wrongful use of force, violence or fear. The context in which defendants, by their own words and actions, sought to induce fear in their victim takes on particular significance in view of defendants' very bad reputations which they themselves brought home to their victim. When men of such reputations threaten the use of muscle, threaten a broken head, threaten broken arms and threaten a person with ending up in the river—such threats must be viewed as commensurate with the reputations of those making the threats effectively to carry them out. Here the record leaves no doubt that defendants meant what they said, that they had the capacity to deliver upon their threats and that their reputations were such that their victim so understood it.

This victim (whose testimony was critical in convicting defendants), his wife, five young children and his mother and father all live within relatively short distance of defendants. Likewise, the key witnesses and most of the jurors live in the Bridgeport-New Haven areas.

In my opinion, there are no conditions of release, at this stage of the case and on this record, which will reasonably assure that these convicted defendants will not pose a danger to any other person or to the community. I so hold.

15. This record, believed to be more than adequate to support the risk of danger ground of the instant order, makes it unnecessary for the Court to rely upon various FBI reports tendered to the Court by the government pursuant to 18 U.S.C. § 3146(f) at the hearing on the instant application.

* District Court's order denying bail pending appeal affirmed by Court of Appeals for Second Circuit (IRK, RPA and ECMcL) on December 19, 1968 in per curiam opinion reading:
"Judge Timbers found that the very crime of which the defendants were con-