**UNITED STATES of America**

v.

**Juan Rubén ESTELA MELÉNDEZ.**

**Crim. No. 88–0253 (GG).**

United States District Court,
D. Puerto Rico.

Oct. 26, 1988.

Guillermo Gil, Everett M. de Jesús, U.S. Dept. of Justice, Guaynabo, P.R., for plaintiff.

Carlos Noriega, Hato Rey, P.R., for defendant.

## ORDER

GIERBOLINI, District Judge.

Defendant, Juan Rubén Estela Meléndez was charged in a superseding indictment along with others for violations of the Federal Narcotics Laws, Title 21 U.S.C. §§ 841(a)(1), 952, 960, 963 and 846 and the Federal Weapons Laws, Title 18 U.S.C. § 924(c)(1). Shortly after his arrest, on September 16, 1988 the government filed a motion requesting defendant be held without bail pursuant to Title 18 U.S.C. § 3142, *et seq.*, since defendant allegedly constituted a risk of flight and a danger to the community.

On September 20, 1988 a detention/bail hearing was held before the magistrate at which time both parties made a proffer of evidence. At the conclusion of said hearing, the magistrate denied the government's motion to detain without bail, and set bond in the amount of $300,000 cash or surety, to be satisfied with at least ten real properties belonging to neighbors or relatives, and placed defendant in the third party custody of Salvador Acevedo–Colón, Esquire. The government then moved to stay the execution of the magistrate's order pending an appeal before the undersigned and the stay was granted. On that same afternoon, the government filed the present appeal. For the reasons stated below we reverse the decision of the magistrate.

· On September 22, 1988 we issued an order granting the government seven days to file its brief on appeal and defendant ten days thereafter to file his reply. On September 29, 1988 the government filed its brief. No reply has been filed by defendant. Upon review of the transcript of the detention hearing before the magistrate, it appears that the government's evidence as proffered is to the effect that the defend-

ant has been involved in illicit drug trafficking activities since approximately 1980, when he commenced his association with Luis Viera–Lourido, now a federal witness. As a result of this association, defendant made contacts with a Colombian marihuana and cocaine source of supply and traveled to Colombia, South America on several occasions.

The proffered evidence would also show that defendant was co-owner of the 1,200 pounds of marihuana brought in through La Furnia farm in Barcelona, Puerto Rico on November 1, 1986. During the unloading of the marihuana, a shootout ensued between state police officers and personnel at the strip. Meanwhile, the defendant was patrolling in a car along the state road across from La Furnia farm looking out for the police. He was armed with a handgun and had a radio receiver-transmitter (walkie-talkie) with which he communicated with the persons on the airstrip. Defendant eluded the police by passing as a police officer while going through a roadblock.

The proffered evidence would further reveal that defendant facilitated the entrance by co-defendants to Luis Viera–Lourido's residence on April 17, 1986, which co-defendants' intentions were to murder Viera–Lourido to prevent him from testifying as a government witness. These co-defendants allegedly murdered Viera–Lourido's wife and her girlfriend after failing to find him at his residence.

The government has also submitted additional information it obtained after the detention hearing from Luis Viera–Lourido that the defendant worked with him from 1980 until 1983, in the importation and distribution of narcotics. Viera–Lourido also confided that the defendant had illicit drug dealings with brothers Abraham and Gil Arzola and that he fled to Spain following the Arzola brothers' arrest because he feared arrest.

Defendant proffered evidence to the effect that he has a sentimental attachment toward his son who suffers from multiple sclerosis and that therefore, he does not represent a risk of flight. Defendant also stated that there were numerous individuals who knew him well and would testify that he is very noble, that he enjoys a good reputation in his community, thus, that he is not a violent person, and does not represent a danger to the community. "This notwithstanding, we note that it is customary for leaders of successful criminal organizations to cultivate and maintain a facade of respectability in their own close communities." *United States v. Medina*, 570 F.Supp. 853, 856 (D.P.R.1983). Likewise, "[i]t is also a well known fact that leaders of criminal organizations cultivate and maintain an excellent image of genteelness which flies in the face of their true criminal inclinations." *Id.* at 857.

Under 18 U.S.C. § 3142(e) there is a rebuttable presumption that no condition or conditions will reasonably assure the appearance of the person as required if there is probable cause to believe that the defendant had committed an offense for which a minimum term of imprisonment of ten years is prescribed in the Controlled Substances Act (21 U.S.C. 801, *et seq.*), among others. *United States v. Palmer–Contreras*, 835 F.2d 15 (1st Cir.1987). This presumption reflects Congress' findings that drug traffickers have the economic resources and foreign contacts to escape to other countries to avoid prosecution due to the extremely lucrative nature of drug trafficking and the fact that drug traffickers often have established substantial ties outside the United States from where most drugs are imported. For these persons, forfeiture of bond is simply a cost of doing business, and therefore, drug traffickers pose special flight risks. *United States v. Jessup*, 757 F.2d 378, 385 (1st Cir.1985); *see also* S.Rep. No. 225, 98th Cong. 1st Sess. 19, 20, 23–24, 1984 U.S.Code Cong. & Admin.News, pp. 3200–3203, 3206–3207.

Under 3142(e) defendant bears the burden of producing evidence, to rebut the presumption. *United States v. Jessup*, 757 F.2d 378, 381 (1st Cir.1985). The burden of persuasion remains with the government. Once defendant produces such evidence, the magistrate shall give the presumptions proper evidentiary value in deciding whether to detain defendant. *Jessup, supra*, 757

84

F.2d at 386; *United States v. Vargas,* 804 F.2d 157, 162 (1st Cir.1986).

█ We have carefully reviewed the record together with the transcript of the proceedings before the magistrate and find that the government has presented clear and convincing evidence that defendant poses a special flight risk and a danger to the community. The facts here reveal that this is no ordinary drug case. Defendant was co-owner of the 1,200 pounds of marihuana subject of the present indictment and traveled frequently to Colombia where he had contacts with a marihuana and cocaine source of supply. We can infer from the large amount of drugs involved here, from defendant's frequent trips to Colombia, from his prior flight from this jurisdiction to avoid possible prosecution in another case, and his prior drug dealings, that defendant is connected to persons or an organization with great financial resources which could easily finance defendant's relocation. Differently stated, defendant or his associates appear to be involved in the highly lucrative drug operations at the center of congressional concern and as such, are persons at whom the Section 3142(e) presumption is directed. Thus, under these circumstances we find no combination of conditions that would reasonably assure defendant's appearance.

Furthermore, from the evidence proffered it appears that defendant facilitated entrance by co-defendants to Luis Viera–Lourido's residence on April 17, 1986 in order to murder Viera–Lourido to prevent him from testifying. After failing to find Viera–Lourido at home, they allegedly murdered his wife and her girlfriend. It further appears that Mr. Viera–Lourido is a federal witness of proven reliability and credibility who was a main prosecution witness in the so called "Ali Baba" case and two other drug cases in which all the defendants were convicted. We believe that the nature of defendant's conduct regarding this potential government witness warrants detention on the basis of dangerousness.

We conclude that on this instance of past behavior there is a serious risk that defendant, if released, will attempt to injure or intimidate prospective witnesses as described in Section 3142(f)(2)(B), and that no condition or combination of conditions set forth in Section 3142(c) will reasonably assure their safety. *See United States v. Ploof,* 851 F.2d 7 (1st Cir.1988); *United States v. Acevedo–Ramos,* 755 F.2d 203, 206 (1st Cir.1985).

Wherefore, in view of the above, the Magistrate's Order of September 20, 1988 setting bond is hereby vacated and set aside. Defendant Juan Rubén Estela–Meléndez shall remain in the custody of the Attorney General of the United States without bail pending trial.

SO ORDERED.