**UNITED STATES, Appellee,**

v.

**Juan Ruben ESTELA–MELENDEZ, Defendant, Appellant.**

**No. 89–1542.**

United States Court of Appeals, First Circuit.

Submitted June 21, 1989.

Decided June 30, 1989.

Thomas M. Dawson on motion for appellant "to reinstate appellate rights and motion to reverse order of detention."

Daniel F. Lopez–Romo, U.S. Atty., Everett M. deJesus, Hato Rey, P.R., and Margaret A. Grove, U.S. Dept. of Justice, Washington, D.C., on brief for appellee, in opposition thereto.

Before BOWNES, TORRUELLA and SELYA, Circuit Judges.

PER CURIAM.

Appellant was ordered detained pending trial. He seeks appellate review of the detention order. He failed, however, to file a timely notice of appeal. His subsequent efforts to get his case into a procedural posture whereby this court could review the detention order have led to this appeal. We review the background.

Defendant was indicted along with forty other people for conspiracy to possess with intent to distribute marijuana and cocaine and various substantive offenses. In particular, defendant was alleged to have been involved in a November 1, 1986 importation of 1,200 pounds of marijuana.

A detention hearing was held before a magistrate on September 20, 1988. The government proceeded by way of proffer, indicating that it could produce an informant who would testify in support of the government's account of events. The government represented that defendant had been involved in drug trafficking since 1980. He had traveled to Colombia on various occasions, had had direct contact with Colombian suppliers, and had been a co-owner of the November 1, 1986 1,200 pounds of marijuana. Defendant, armed with a pistol and walkie-talkie, had conducted surveillance outside the airstrip where the planeload of marijuana had landed. A shoot-out with the Puerto Rico police had

occurred on the airstrip. Defendant had been able to evade police, passing through a roadblock, because the police had mistaken his car for a police car. Earlier, in April 1986, defendant had facilitated co-defendants' entrance to informant Viera–Lourido's home. The co-defendants had planned to murder Viera–Lourido, but, not finding him at home, killed the informant's wife and her friend instead.

Defendant objected to the government's proceeding by way of proffer in view of the serious accusations being made. Defendant said he could produce dozens of witnesses, including a former superior court judge who was willing to accept responsibility for and supervision over defendant, a retired police lieutenant colonel, a professor, a nurse, a lawyer, and many friends and neighbors, all of whom would testify that defendant was not violent, that he was attached to a teenage son who suffered from muscular dystrophy, and that defendant would not flee or pose a danger to the community.

The magistrate set bond at $300,000, to be posted with at least ten properties of family or friends, placed defendant in the third-party custody of the former superior court judge, and granted the government's motion to stay execution of the release order.

The government appealed to the district court and filed a memorandum in support. The government represented that it had had a further conversation with Viera–Lourido during which the informant stated he had worked with defendant from 1980 to 1983 importing and distributing narcotics, that defendant had also had drug dealings with the Arzola brothers, and that defendant had fled to Spain upon the Arzolas' arrest. The government argued that in view of defendant's past flight, his association with a large drug organization which did not shrink from shoot-outs with police or attempts to murder informants, the fact that if convicted defendant could receive up to a 55 year sentence, and defendant's involvement in the murder of Viera–Lourido's wife, defendant's release would pose a serious risk of flight, of witness intimidation, and of obstruction of justice.

Despite an order directing defendant to file a reply to the government's brief, defendant, then represented by Attorney Carlos Noriega, did not comply and filed no response. The court reviewed the transcript of the hearing before the magistrate along with the government's supplemental proffer, vacated the magistrate's release order, and ordered detention on risk of flight and serious risk of witness intimidation grounds. 700 F.Supp. 82.

On November 22, 1988, almost a month after the issuance of the detention order, co-counsel Rafael Rivera (who had recently filed an appearance on defendant's behalf indicating that he and Carlos Noriega would both represent defendant) filed a motion for reconsideration of the detention order. The motion asserted that defendant had voluntarily surrendered to the police, that he had lived his whole life in Puerto Rico, that he had been married for 15 years, that defendant had three children aged 14, 8, and 2, and that he was a college graduate with an auto-parts business and a precarious financial state. Counsel argued that the government's proffer was incredible, for if defendant had been in the drug business since 1980, he would now be wealthy. It was unlikely defendant was a co-owner of the 1,200 pounds of marijuana, for a co-owner or leader would have placed subordinates in charge of patrol rather than risk being caught himself. As for the government's claim that defendant had facilitated entrance to Viera–Lourido's residence on April 17, 1986, Viera–Lourido could not have furnished this information since he was not home the night his wife was murdered, and the government had not otherwise identified its source. Finally, Viera–Lourido's claim that he and defendant had worked together from 1980 to 1983 was incredible since Viera–Lourido had been serving an indeterminate term of imprisonment at that time. Moreover, counsel asserted, Viera–Lourido had a long psychiatric record worsened by drug addiction. Counsel requested a hearing. Oral argument on the motion for reconsideration was heard on December 2, 1988 (no transcript

of this hearing has been furnished), after which the motion was denied.

A second motion for reconsideration was filed on December 12, 1988. Counsel argued that none of the discovery material provided contained any evidence incriminating defendant and hence the only basis on which defendant was being detained was the government's uncorroborated proffer. Counsel asserted that defendant had never traveled to, let alone fled to, Spain nor gone to Colombia.

The second motion for reconsideration was denied on January 13, 1989. Counsel did not file a notice of appeal until January 30, 1989, which was after the ten day period for appealing had expired. *United States v. Kolek*, 728 F.2d 1280 (9th Cir. 1984) (ten days for appealing from the denial of pre-trial bail). This court treated defendant's late notice of appeal as an implicit request under Fed.R.App.P. 4(a)(5) to extend the time for appealing and remanded to the district court for action thereon. Attorney Rafael Rivera then argued to the district court that the time for appealing from the January 13, 1989 order denying the second motion for reconsideration should be extended because Attorney Rafael Rivera had not received the order until January 19, 1989, had been ill from January 26 through 29, and had been misled by the government that the case would be ready for trial by the end of February 1989, with the result that the attorney had felt any appeal might become moot before being decided.

The ten days for appealing expired on January 23, 1989, four days after Attorney Rafael Rivera admittedly received a copy of the January 13, 1989 order and three days before he became sick. The court found no excusable neglect for failing to file a timely appeal, and, on March 31, 1989, denied any extension. Defendant did not appeal from that order denying an extension.

In April, Attorneys Rafael Rivera and Carlos Noriega withdrew and new counsel entered appearances for defendant. Thereafter, the new counsel filed a motion to reinstate appellate rights contending that defendant had been denied the effective assistance of counsel in view of former counsels' failure to file a brief in opposition to the government's appeal from the magistrate's release order and counsels' failure to appeal from the detention order in a timely fashion. While counsel did not spell it out, apparently what they may have wanted the court to do was to reenter either the detention order or the orders denying reconsideration so that a new ten day appeal period would run. The motion did not ask for a hearing or submit an affidavit from defendant clearly stating that defendant had asked former counsel to appeal the detention order but that they had refused. The motion was denied without comment, and defendant has now timely appealed from that denial and filed a motion with this court to reinstate appellate rights and reverse detention order.

We start by noting what defendant has not argued on appeal. He has not contended that any timely appeal from the detention order or from any of the motions denying reconsideration was filed. That is, he has not claimed that some time period other than the ten days specified in Fed.R. App.P. 4(b) applied. Consequently, in order for this court to have jurisdiction to review the detention order or orders denying reconsideration, defendant has to establish that the district court had the power to reenter its order in order to start a new appeal period, but abused its discretion in refusing to do so.

We will assume for the purpose of this appeal without so deciding that, in appropriate circumstances, a district court has the power to reenter an order so as to start a new appeal period. *See* 9 Moore's Federal Practice ¶ 204.13[5]. And, it may be that the loss of a right to appeal stemming from ineffective assistance of counsel would be an appropriate circumstance in which to vacate and reenter an order. Defendant's difficulty, however, is that he failed below to establish ineffective assistance of counsel. Nowhere did defendant state that he promptly asked counsel to appeal the detention order, but that counsel failed to do so. It is not inconceivable that defendant,

in consultation with counsel, may have initially decided not to appeal, in view of, say, an expectation that trial would soon be starting or the fact that rarely have bail appeals to this court been successful. Defendant did not ask for an evidentiary hearing at which to establish ineffective assistance of counsel. Rather, defendant appeared to rely on former counsels' failure to file a brief and failure to file a timely notice of appeal as establishing, by themselves, ineffective assistance. This was not enough, for a voluntary decision not to appeal or a change of mind communicated too late to counsel would not constitute ineffective assistance of counsel.

Consequently, as defendant failed to establish ineffective assistance of counsel below, we uphold the district court's denial of defendant's motion to reinstate appellate rights.

The May 12, 1989 order denying motion to reinstate appellate rights is summarily affirmed pursuant to First Circuit Rule 27.-1. The motion filed in this court to reinstate appellate rights and reverse order of detention is denied.