**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Matias MONTEMAYOR,**
**Defendant-Appellant.**

**Nos. 81–2349, 81–2350**
**Summary Calendar.**

United States Court of Appeals,
Fifth Circuit.

Jan. 22, 1982.

---

**236**

Dale Robertson, Brownsville, Tex., for defendant-appellant.

John M. Potter, Asst. U. S. Atty., Houston, Tex., for plaintiff-appellee.

Before RUBIN, SAM D. JOHNSON, and GARWOOD, Circuit Judges.

PER CURIAM:

A grand jury sitting in the Southern District of Texas, Brownsville Division, returned two indictments against Matias Montemayor, stating thirteen counts of violation of federal firearm laws. The United States magistrate set bail at $2,000,000 in the first action and $1,000,000 in the second action. Montemayor applied to the magistrate for review of his order pursuant to 18 U.S.C. § 3146(d). After a bail review hearing, the magistrate ordered the bail in the first action reduced to $1,000,000 and in the second action reduced to $350,000. Montemayor then sought further reduction of bail by filing in the district court motions to amend the orders imposing conditions of release, pursuant to 18 U.S.C. § 3147. The district court conducted a hearing on the motions, found the magistrate's orders to be supported by the evidence and declined to amend the orders. Montemayor appeals, contending that the district court erred by considering evidence inadmissible under the Federal Rules of Evidence, and that, when the contested evidence is excluded, the bail is excessive.

The evidence presented in the hearings before the magistrate and the district court indicates that Montemayor is a man whose considerable financial resources are matched only by his problems with the law. Montemayor is a Mexican citizen who has been living in the United States as a resident alien since 1954. In 1972 he was convicted in the United States District Court for the Northern District of Illinois on charges of conspiring to dispense and distribute narcotics, i.e., cocaine. That conviction spurred the Immigration and Naturalization Service (INS) to initiate deportation proceedings against Montemayor in 1977. The proceedings were suspended when Montemayor failed to appear for his scheduled hearing. The INS investigator testifying at the bail hearing indicated that after Montemayor was taken into custody on the presently pending criminal charges, Montemayor was notified that the deportation proceedings would be recommenced; they will remain in abeyance, however, until the matters implicated in the presently pending criminal charges and criminal investigations are resolved.

Other evidence introduced at the hearing indicated that Montemayor had retained close ties with Mexico. A Drug Enforcement Administration (DEA) Special Agent testified that his investigation of Montemayor disclosed that Montemayor owned a home in Monterrey, Mexico, and two ranches near Cerralvo, Mexico. Montemayor's wife is a Mexican citizen twice apprehended by the INS for living illegally in the United States; the legality of his children's residence in the United States is uncertain, as they claim both Mexican and United States citizenships by birth.

The criminal charges currently pending against Montemayor carry a maximum

combined penalty of sixty-four years, and an $80,000 fine.

In addition to the above-reviewed evidence, the district court also considered information about Montemayor, his activities, and his property holdings in the United States which had come to its attention in the course of four civil proceedings pending before it. Montemayor was a claimant in these proceedings, seeking the return of property which the United States government had seized as forfeit, pursuant to 21 U.S.C. § 881(a)(6), as representing the proceeds of illicit trafficking in controlled substances. It appears that the seizures were made as the result of investigations by both the DEA and the Internal Revenue Service into Montemayor's alleged involvement in narcotics dealing. Among the items of real and personal property which Montemayor sought to reclaim were ten horses, one Piper Navajo PA–31 airplane, and one 1981 Lincoln Continental Mark VI. All told, over $2,000,000 in holdings were at stake in the forfeiture proceedings. The district court considered this information in assessing Montemayor's financial resources, and in estimating the amount of bail which would be necessary to assure his appearance in connection with the firearms charges, in view of his financial resources.

Finally, both the district court and the magistrate took judicial notice of the proximity of Brownsville to Mexico, the fact that there is currently no extradition treaty in force between the United States and Mexico providing for the return to the United States of citizens of Mexico who are wanted for crimes committed in the United States, and noted that the combination of these circumstances had led to an unusually large number of fugitives in criminal cases pending before it.

█ Montemayor's objections are to the district court's taking of judicial notice of civil cases pending before it, and of the fugitive rate experienced in its criminal docket. According to Montemayor, none of this evidence is admissible under the Federal Rules of Evidence. He contends those rules to be applicable to bail hearings before a district court, notwithstanding their inapplicability, by authority of 18 U.S.C. § 3146(f), to bail hearings before a magistrate. The courts which have in published opinions considered this question have rejected Montemayor's position. *United States v. Wind*, 527 F.2d 672, 675 (6th Cir. 1975); *United States v. Meinster*, 481 F.Supp. 1117, 1123 (S.D.Fla.1979); *United States v. Brown*, 399 F.Supp. 631, 633 (W.D. Okla.1975). We do, also, for two reasons.

The first reason is the nature of the process established under 18 U.S.C. § 3141 *et seq.* for the setting and review of bail. By its terms, section 3146 does apply only to initial and reconsideration bail hearings before a magistrate. The subsequent section, 18 U.S.C. § 3147, provides for review as of right before the district court and the court of appeals. The proceedings provided for in section 3147 are not, however, independent of the section 3146 proceedings before a magistrate, but are merely continuations of the process there begun. There is no reason, in logic or in law, that evidence admissible to the magistrate's initial consideration of the matter should be considered inadmissible to subsequent judicial review.

The second reason is that the Federal Rules of Evidence themselves provide that they are not applicable to bail hearings. Fed.R.Evid. 101 states that "[t]hese rules govern proceedings in the courts of the United States and before United States magistrates, to the extent and with the exceptions stated in rule 1101." Fed.R. Evid. 1101(d)(3) provides that "[t]he rules (other than with respect to privileges) do not apply [to] . . . proceedings with respect to release on bail or otherwise."

█ But even in consideration of the rules of evidence, Montemayor's argument would fail. It was not error under those rules for the district court to take judicial notice of matters pending on its own docket. *ITT Rayonier, Inc. v. United States*, 651 F.2d 343, 345 n.2 (5th Cir. 1981). Nor was it improper for the district court to consider, in light of Montemayor's proven ties to Mexico, the ease with which escape from its jurisdiction into the safe haven of Mexico could be made.

The district court did not err in basing its evaluation of the magistrate's bond orders on the evidence before it. On that evidence Montemayor did not argue, and we cannot say, that the district court erred in finding the amount of bail set by the magistrate not to be excessive. The judgment is affirmed.

AFFIRMED.