# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### July 17, 2007 Session

## STATE OF TENNESSEE v. JAMES ALTON CAMPBELL a/k/a JAMIE CAMPBELL

### Appeal from the Circuit Court for Grundy County
### No. 3972    Thomas W. Graham, Judge

---

### No. M2006-01817-CCA-R3-CD - Filed November 7, 2007

---

The defendant, James Alton Campbell, was convicted of aggravated assault and sentenced as a Range III, persistent offender to 15 years' incarceration. In this appeal, he challenges the sufficiency of the evidence, the admission of a photograph depicting the victim's injury, and the length of his sentence. Finding no reversible error, we affirm the judgment of the trial court.

### Tenn. R. App. P. 3; Judgment of the Circuit Court Affirmed

JAMES CURWOOD WITT, JR., J., delivered the opinion of the court, in which JOSEPH M. TIPTON, P.J., and JERRY L. SMITH, J., joined.

Philip A. Condra, District Public Defender, and Robert G. Morgan, Assistant District Public Defender, for the appellant, James Alton Campbell a/k/a Jamie Campbell.

Robert E. Cooper, Jr., Attorney General & Reporter; Elizabeth B. Marney, Assistant Attorney General; J. Michael Taylor, District Attorney General; and Steve Strain, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

On Saturday, November 2, 2003, the victim, George Byers, Jr., went to the Monteagle VFW to drink and dance. The victim drank beer and visited with friends for a couple of hours before going outside for fresh air. Outside, he encountered the defendant, whom he had known for some time but had not seen in several years. The victim explained that his family and the defendant's family "are married into each other[]." According to the victim, the defendant approached him and asked if he knew who the defendant was, and the victim replied that he did and that he "wasn't scared of him, or of his mama, or his daddy, his brothers, sisters, or none of them." At that point, the defendant stabbed the victim twice in the abdomen and ran away. The victim denied threatening the defendant and insisted that he was not armed. The victim acknowledged consuming four beers and one gin and tonic prior to the offense.

After the stabbing, the victim, who did not initially realize that he had been stabbed, experienced a great deal of pain and difficulty breathing. After an evaluation at Emerald Hodgson Hospital in Sewanee, the victim was airlifted to Erlanger Medical Center in Chattanooga. The victim required surgery followed by a nine-day hospital stay and nearly one month of bed rest.

The victim's cousin, Tammy Boyd, testified that she attended an anniversary party at the Monteagle VFW on the night of the offense. She noted that "everybody was feeling good" and that the victim was "all over the place . . . visiting." Ms. Boyd, who admitted that she was "kind of severely intoxicated" at the time of the offense, recalled that she heard screaming and went outside to find the victim leaning against a friend and bleeding.

Monteagle Police Officer Donald Dykes arrived at the VFW at 12:40 a.m., verified that the victim had been stabbed, and notified emergency medical services. Officer Dykes recalled that the victim had difficulty breathing at the scene and that he was unable to take a complete statement from the victim because of his condition.

Julia Meeks, a friend of the defendant, testified that she went to the VFW with the defendant and others to dance. She described the victim, who she knew as "Snowball Boy," as "pretty well lit." She explained that "[h]e was mouthy . . . cussing a lot and flirty a lot." Ms. Meeks recalled that the victim was "throwing threats toward [the defendant's wife] about [the defendant]." She stated that the victim, who was armed with a knife "like . . . you would skin a deer or something with," was standing outside when her party left the VFW. She heard the victim say in a loud, threatening manner that "he'[d] take care of [the defendant] and he's tired of the Campbells, and he'd had enough and he was going to show them." Ms. Meeks left before the stabbing.

The defendant's brother-in-law, Jimmy Dale Nolan, testified that the victim "started bad mouthing" the defendant while outside the VFW. He stated that the victim and the defendant had a "quiet conversation" during which he overheard the victim say "something about [the defendant's] daddy." At that point, Mr. Nolan saw the victim "reach in his left pocket, look like the bulge of [a] gun in his pocket and he had a scabbard knife . . . on his right side." Mr. Nolan admitted that it was against the rules to carry weapons inside the VFW. Although he insisted that he had seen the handle of the victim's gun, he admitted that he left the scene before police arrived and never informed police that the victim had been armed. Mr. Nolan stated that he could not remember whether he had discussed the case with the defendant prior to trial because he "had a bad car wreck in 1993, and [his] memory comes and goes."

At the conclusion of the trial, the jury returned a verdict of guilty on the single count of aggravated assault.

## I. Sufficiency of the Evidence

The defendant asserts that the evidence is insufficient to support a conviction for aggravated assault because the State failed to establish the element of serious bodily injury. When

an accused challenges the sufficiency of the evidence, an appellate court's standard of review is whether, after considering the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Tenn. R. App. P. 13(e); *Jackson v. Virginia*, 443 U.S. 307, 324, 99 S. Ct. 2781, 2791-92 (1979); *State v. Winters*, 137 S.W.3d 641, 654 (Tenn. Crim. App. 2003). The rule applies to findings of guilt based upon direct evidence, circumstantial evidence, or a combination of direct and circumstantial evidence. *Winters*, 137 S.W.3d at 654.

In determining the sufficiency of the evidence, this court should neither re-weigh the evidence nor substitute its inferences for those drawn by the trier of fact. *Id.* at 655. Questions concerning the credibility of the witnesses, the weight and value of the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact. *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn. 1978). Significantly, this court must afford the State of Tennessee the strongest legitimate view of the evidence contained in the record as well as all reasonable and legitimate inferences which may be drawn from the evidence. *Id.*

As alleged in the indictment, "[a] person commits aggravated assault who . . . [i]ntentionally or knowingly commits an assault as defined in § 39-13-101 and . . . [c]auses serious bodily injury to another." T.C.A. § 39-13-102(a)(1)(A) (2003). Code section 39-13-101(a)(1) provides that "[a] person commits assault who . . . [i]ntentionally, knowingly or recklessly causes bodily injury to another." *Id.* § 39-13-101(a)(1). "'Bodily injury' includes a cut, abrasion, bruise, burn or disfigurement, and physical pain or temporary illness or impairment of the function of a bodily member, organ, or mental faculty[.]" *Id.* § 39-11-106(a)(2). "'Serious bodily injury' means bodily injury that involves . . . [a] substantial risk of death; [p]rotracted unconsciousness; [e]xtreme physical pain; [p]rotracted or obvious disfigurement; or [p]rotracted loss or substantial impairment of a function of a bodily member, organ or mental faculty[.]" *Id.* § 39-11-106(a)(34).

Here, the defendant stabbed the victim twice in the abdomen. The victim testified that he was unable to stand after the stabbing and that he had difficulty breathing. The victim was initially taken to a hospital in Sewanee, but was then airlifted to Erlanger Medical Center in Chattanooga for treatment. Exploratory surgery was performed, and the victim remained in the hospital for nine days. After being released from the hospital, the victim was under doctors' orders to refrain from work for nearly a month. Clearly, the victim suffered extreme physical pain if not a substantial risk of death. In consequence, the evidence was sufficient to support the conviction for aggravated assault.

## II. Photograph of the Victim's Injury

The defendant next contends that the trial court erred by admitting into evidence a photograph depicting the victim's stab wounds. He asserts that the photograph was misleading because it showed the surgical incision as well as the two stab wounds. The State claims the trial court did not abuse its discretion by admitting the photographs.

The admissibility of photographs is governed by Tennessee Rules of Evidence 401 and 403. *See State v. Banks*, 564 S.W.2d 947, 951 (Tenn. 1978). Under these rules, the trial court must determine, first, whether the photograph is relevant. Tenn. R. Evid. 401; *Banks*, 564 S.W.2d at 949. Next, the trial court must determine whether the probative value of the photograph is substantially outweighed the danger of unfair prejudice. Tenn. R. Evid. 403; *Banks*, 564 S.W.2d at 950-51. The term "unfair prejudice" has been defined as "[a]n undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." *Banks*, 564 S.W.2d at 951. Photographs offered by the State must be relevant to prove some part of its case and must not be admitted solely to inflame the jury and prejudice it against the defendant. *Id*. Whether to admit the photographs rests within the sound discretion of the trial court and will not be reversed absent a clear showing of an abuse of that discretion. *Banks*, 564 S.W.2d at 949; *see also State v. Dickerson*, 885 S.W.2d 90, 92 (Tenn. Crim. App. 1993); *State v. Allen*, 692 S.W.2d 651, 654 (Tenn. Crim. App. 1985).

In this case, the State introduced a single photograph of the victim's wounds. Depicted in the photograph are the two small stab wounds as well as a large surgical incision related to the exploratory surgery performed after the assault. The defendant objected to the admission of the photograph on the grounds that the jury might be misled to believe that the large incision was caused by the stabbing. The trial court concluded that the photograph was not misleading. The photograph is not gruesome and was probative of the element of serious bodily injury. The State made clear during direct examination of the victim, and the defense reiterated on cross-examination, that the large incision depicted in the photograph was the result of surgery performed after the stabbing. The victim circled the actual stab wounds during his direct testimony. Under these circumstances, the trial court did not abuse its discretion.

*III. Sentencing*

In his final claim, the defendant asserts that the State failed to establish that he was a Range III offender and that the trial court erred by taking judicial notice of his prior Grundy County convictions. He also asks this court to "review the holdings in *State v. Gomez*, 163 S.W.3d 632 (Tenn. 2005)[,] and apply it to the sentence imposed." The State contends that the defendant was properly classified as a Range III offender and that the trial court did not err by taking judicial notice of the defendant's prior convictions. The State submits that the defendant waived any claim of error under *Blakely v. Washington*, 542 U.S. 296, 124 S. Ct. 2531 (2004), by failing to raise the issue prior to sentencing.

A. *Blakely* Claim

On January 22, 2007, the United States Supreme Court released its decision in *Cunningham v. California*, U.S. , 127 S. Ct. 856 (2007), holding that California's sentencing scheme did not survive Sixth Amendment scrutiny intact under *Blakely*, and following on the heels of *Cunningham*, the Supreme Court on February 20, 2007, vacated the Tennessee Supreme Court's judgment in *Gomez* and remanded that case for reconsideration in light of *Cunningham*, *see Gomez*

*v. Tennessee*, U.S. , 127 S. Ct. 1209 (2007). We have previously analyzed at length the meaning and impact of *Cunningham* and the Supreme Court's vacating the judgment in *Gomez*, *see State v. Mark A. Schiefelbein*, 230 S.W.3d 88, No. M2005-00166-CCA-R3-CD, slip op. at 54-60 (Tenn. Crim. App., Nashville, Feb. 8, 2007), *reh'g granted* (Mar. 7, 2007) (order on petition to rehear modifying defendants' sentences pursuant to *Blakely* and *Cunningham*), *perm. app. denied* (June 18, 2007), and we do not repeat that analysis. Suffice it to say that the 2005 *Gomez* decision no longer controls pre-2005 sentencing. *Id.* (order on petition to rehear; "*Cunningham* did apply the *coup de grace* to the rationale employed in Tennessee's pre-2005 sentencing law.").

In this case, however, the record establishes that the defendant waived any claim to relief under the *Blakely-Cunningham* regime by failing to raise the issue in a timely manner. The defendant was convicted on September 29, 2005, and the sentencing hearing was held on December 1, 2005, more than one year after *Blakely* was decided. Despite the existence of *Blakely*, the defendant did not challenge the trial court's application of the enhancement factors under the Sixth Amendment. At the hearing on the motion for a new trial, the defendant challenged the trial court's decision to enhance his sentence based upon the use of a deadly weapon, noting, "[W]e're making this averment to . . . try to preserve any post *Blakely* decisions that may come forward." Despite this statement, it is our view that the defendant failed to preserve this issue for appellate review. Furthermore, with the exception of his general claim of *Blakely* error, the defendant does not challenge on appeal the application of the enhancement factors. Under these circumstances, consideration of the issue under the plain error doctrine is not necessary to do substantial justice. *See State v. Adkisson*, 899 S.W.2d 626, 641-42 (Tenn. Crim. App. 1994) (establishing five prerequisites to the review of plain error, including whether "consideration of the error is necessary to do substantial justice.")

## B. Range Classification and Length of Sentence

When a defendant challenges the sentencing decision of the trial court, this court generally conducts a de novo review of the record with a presumption that the determinations made by the trial court are correct. T.C.A. § 40-35-401(d) (2003).[1] This presumption, however, is conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances. *State v. Ashby*, 823 S.W.2d 166, 169 (Tenn. 1991). The burden of showing that the sentence is improper is upon the defendant. *Id.* If the review reflects the trial court properly considered all relevant factors and its findings of fact are adequately supported by the record, this court must affirm the sentence, "even if we would have preferred a different result." *State v. Fletcher*, 805 S.W.2d 785, 789 (Tenn. Crim. App. 1991). In the event the

---

[1]Because the defendant was sentenced in December 2005 for a crime committed in 2003, and because there is no ex post facto waiver in the record, the 2003 version of the 1989 Sentencing Act is applicable. *See* T.C.A. § 40-35-102 (2006), Compiler's Notes ("Offenses committed prior to June 7, 2005, shall be governed by prior law, which shall apply in all respects. However, for defendants who are sentenced after June 7, 2005, for offenses committed on or after July 1, 1982, the defendant may elect to be sentenced under the provisions of the act by executing a waiver of such defendant's ex post facto protections. . . .").

record fails to demonstrate the required consideration by the trial court, appellate review of the sentence is purely de novo. *Ashby*, 823 S.W.2d at 169.

In making its sentencing determination in the present case, the trial court, at the conclusion of the sentencing hearing, was obliged to determine the propriety of sentencing alternatives by considering (1) the evidence, if any, received at the guilty plea and sentencing hearings, (2) the presentence report, (3) the principles of sentencing and arguments as to sentencing alternatives, (4) the nature and characteristics of the criminal conduct involved, (5) evidence and information offered by the parties on the enhancement and mitigating factors, (6) any statements the defendant made in his behalf about sentencing, and (7) the potential for rehabilitation or treatment. T.C.A. § 40-35-210(a), (b); -103(5); *State v. Holland*, 860 S.W.2d 53, 60 (Tenn. Crim. App. 1993).

In arriving at a sentence of fifteen years, the maximum within the range, the trial court concluded that the defendant's "criminal history would have to enhance him close to the maximum," that "the possession of a weapon is extremely serious in this situation," and that "all of this is happening [when the defendant was] on parole." *See* T.C.A. § 40-35-114(2), (10), (14). The trial court noted that it was assessing "three years worth of enhancement to the prior criminal history," "at least one year" for the possession of a deadly weapon, and "at least one year" for the defendant's parolee status. With regard to mitigation, the trial court observed, "I have reviewed the mitigating factors and it's hard to find one in this case that fits." *See id.* § 40-35-113 (for a list of statutory mitigating factors). The trial court noted that, because of the length of his sentence and his offender classification, the defendant was not entitled to an alternative sentence.

Here, the defendant complains that the trial court failed to comply with the sentencing act by taking judicial notice of the defendant's Grundy County convictions rather than requiring the State to introduce certified copies of the judgments. As a result, he contends, he should have been classified as a Range II offender rather than a Range III offender. He does not assert that he lacks the requisite number of convictions to be classified as a Range III offender, but states only that the State and trial court failed to follow the appropriate procedure. He does not challenge the application of the enhancement factors and, indeed, conceded their application during the sentencing hearing.

The record establishes that each of the Grundy County convictions, as well as a number of convictions from other counties, was listed in the presentence report. This court has held that information in a presentence report qualifies as reliable hearsay which may be admitted if the opposing party is offered the opportunity to rebut the same. *State v. Baker*, 956 S.W.2d 8, 17 (Tenn. Crim. App. 1997); *see State v. Richardson*, 875 S.W.2d 671, 677 (Tenn. Crim. App. 1993). Although the Code provides that a certified copy of the prior judgment "bearing the same name as that by which the defendant is charged in the primary offense, is prima facie evidence that the defendant named therein is the same as the defendant before the court, and is prima facie evidence of the facts set out therein," T.C.A. § 40-35-202, certified copies of the prior judgments are not *required*, particularly when, as in this case, the defendant concedes the prior convictions. Moreover, the trial court was permitted under the Rules of Evidence to take judicial notice of the prior convictions. Tennessee Rule of Evidence 201, governing judicial notice, provides that the trial court

"may take judicial notice whether requested or not" of a fact "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Tenn. R. Evid. 201(b), (c). Court records fall within the general rubric of facts readily and accurately determined. *See* Neil P. Cohen, et al. *Tennessee Law of Evidence* 43 (3rd ed. 1995); *U.S. v. Montemayor*, 666 F.2d 235, 237 (5th Cir. 1982). With respect to facts noticed under Rule 201, "no evidence is necessary," *see* Tenn. R. Evid. 201, Advisory Comm'n Comments, and the notice operates in lieu of evidence. In this case, the trial court took judicial notice of the defendant's prior Grundy County convictions. The defendant objected, and the trial court provided him the opportunity to be heard. The defendant did not contest the validity of the prior convictions and complained only that certified copies of the conviction judgments had not been provided. Because the defendant's previous Grundy County convictions were included in the trial court's own records and were "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned," the trial court did not err by taking judicial notice of the fact of the prior convictions.

To qualify as a Range III, persistent offender, a defendant must have "[a]ny combination of five (5) or more prior felony convictions within the conviction class or higher, or within the next two (2) lower felony classes." T.C.A. § 40-35-107(a)(1). The defendant was convicted of aggravated assault, a Class C felony; thus, he needed a total of five prior felony convictions in Class C, D, or E. The presentence report establishes that the defendant has a total of twelve prior felony convictions for purposes of calculating the appropriate sentencing range. The defendant has five Hamilton County Class C felony convictions. Because the notice of intent to seek enhanced punishment filed by the State prior to trial did not include the defendant's Hamilton County convictions, however, the State could not rely on these convictions to establish the appropriate range. Nevertheless, the presentence report establishes that the defendant has felony convictions in Coffee County for escape and burglary and felony convictions in Grundy County for theft over $1,000, theft over $500, and aggravated burglary. The defendant's criminal record, as established by the presentence report, sufficiently supports a Range III classification.

The record also supports the application of enhancement factors (2), (10), and (14). In addition to the five requisite felonies establishing the appropriate range, the defendant has seven other felony convictions and three misdemeanor convictions. Moreover, the record establishes, and the defendant concedes, that he was on parole at the time of the offense. Finally, the proof at trial was undisputed that the defendant stabbed the victim twice. In consequence, the trial court did not err by utilizing these three enhancement factors.

CONCLUSION

The evidence of serious bodily injury was sufficient to support the conviction for aggravated assault. In addition, the trial court did not err by admitting a photograph of the victim's injuries. The defendant waived our consideration of *Blakely* error by failing to raise the issue at or prior to the sentencing hearing. Finally, the record fully supports the sentencing decision of the trial court. Accordingly, the judgment of the trial court is affirmed.

_____
JAMES CURWOOD WITT, JR., JUDGE